Edward F. X. Ryan and Kathryn R. Ryan v. Commissioner.
Ryan v. Commissioner
Docket No. 54115.
United States Tax Court
T.C. Memo 1956-169; 1956 Tax Ct. Memo LEXIS 124; 15 T.C.M. (CCH) 886; T.C.M. (RIA) 56169; July 19, 1956
*124 Held, petitioners failed to prove that stock which they owned became worthless in 1950 so as to entitle them to a capital loss deduction in that year and a carry-over of the balance of such loss to the year 1951. Edward F. X. Ryan, Esq., 115 Broadway, New York, N. Y., for the petitioners. Clarence P. Brazill, Jr., Esq., for the respondent. RICE
Memorandum Opinion RICE, Judge: This proceeding involves deficiencies in income tax in the amount of $236.60 for the year 1950 and $29.86 for 1951. The only issue is whether stock which the petitioners owned became worthless in 1950 so as to entitle them to a capital loss deduction in that year and a carry-over of the balance of such loss to the year 1951. All of the facts were stipulated, are so found, and are incorporated herein by this reference. [Findings of Fact] The petitioners, husband and wife, were residents of Larchmont, New York, during the years in issue. They filed their joint Federal income tax return for 1950 with the former collector of internal revenue for the fourteenth district of New York and their joint return for 1951 with the former collector for the second district of New York. *125 In 1946 petitioners paid $2,000 for 200 shares of stock of Ryan & Reilly, Inc., a chain of grocery stores which had been incorporated in 1944. In 1949 petitioner, Edward F. X. Ryan, received 26 2/3 shares of the same stock as part of an attorney's fee. Ryan & Reilly, Inc., operated profitably in 1946 and 1947 and paid a dividend in one of those years. It sustained losses in succeeding years, including those in issue. On December 31, 1950, its balance sheet showed assets of $119,712.20 and liabilities of $125,483.50. There was $57,643.34 of capital stock outstanding on that date, a deficit in the surplus account of $63,414.64, and a net deficit of $5,771.30. The corporation was operating four stores at the end of that year. By January 1954 it was operating three stores. On April 3, 1954, the balance sheet of the corporation showed a net deficit of $74,620.80. Many of its liabilities on that date consisted of outstanding notes payable on which interest had not been paid after December 31, 1951. On June 24, 1954, one of the note holders secured a judgment against the corporation and a levy of execution was issued against one of its stores and its bank account. On July 8, 1954, the *126 corporation filed a petition under Chapter XI of the Bankruptcy Act in which it alleged that its unpaid debts were $99,947.27 and its assets $18,114.01. The corporation at the time of the hearing was operating under the plan which it proposed in the bankruptcy proceeding to pay off creditors. It still operated two stores. On their returns for 1950 and 1951, petitioners claimed capital loss deductions based on the fact that the stock of Ryan & Reilly, Inc., which they owned in the amount of $2,266.67 had become worthless in 1950. The respondent disallowed the deductions so claimed. [Opinion] The determination of the time when the stock of a corporation becomes worthless calls for practical, realistic tests and a consideration of all facts and circumstances surrounding the operation of the corporation. . The Court of Appeals for the Second Circuit observed in (C.A. 2, 1941), in affirming a Memorandum Opinion of this Court, dated November 15, 1940, that taxpayers are often in a difficult position in determining in what year to claim a loss for worthlessness of stock and *127 that perhaps the only safe practice is for them to claim the loss in the earliest year when it might possibly be allowed and to renew the claim in subsequent years if not permitted in the early one. No doubt that is what the petitioners did in this case. The facts of record, however, do not support their claim that the stock of Ryan & Reilly, Inc., became worthless in 1950. We observed in , affd. (C.A. 7, 1940): "* * * that stock may not be considered as worthless even when having no liquidating value if there is a reasonable hope and expectation that it will become valuable at some future time, and that such hope and expectation may be foreclosed by the happening of certain events such as the bankruptcy, cessation from doing business, or liquidation of the corporation, or the appointment of a receiver for it. Such events are called 'identifiable' in that they are likely to be immediately known by everyone having an interest by way of stockholdings or otherwise in the affairs of the corporation; * * *" We further noted in , that sometimes there are exceptional *128 cases where, even though the corporation continues to operate, its liabilities so greatly exceed its assets and the nature of those assets and its business is such that there is no reasonable hope that its continuing operation would result in any profit to its stockholders. So, also, did the Court of Appeals for the Second Circuit observe in (C.A. 2, 1944), that: "It would be unsafe to say that until a corporate business has been abandoned, there cannot be that 'identifiable event' which is necessary in such situations; but at least we can say that, when the business does continue, the circumstances must be exceptional which will induce us to hold that the shares have as yet become worthless." In this case we find no unusual circumstances which would warrant our finding that the stock of Ryan & Reilly, Inc., a going corporation in both 1950 and 1951, became worthless in the former year. The situation here seems to us much like that in ; ; and (C.A. 2, 1942), affirming *129 a Memorandum Opinion of this Court, dated August 10, 1940, certiorari denied . No doubt it would have been difficult to find a buyer for the corporation's shares in 1950, but it was still a going concern in that year, as in the next, and was operating, for all that this record shows, in the expectation of eventually making a profit. The statute permitting deductible losses for the worthlessness of stock has never contemplated such deductions for mere fluctuation in value. See . We, therefore, hold that the stock did not become worthless in 1950; and it follows that there can be no carry-over to 1951. Decision will be entered for the respondent.